NUMBER 13-13-00625-CR



# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**LANNDON FLOYD SMITH,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

## On appeal from the 377th District Court
## of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, Lanndon Floyd Smith, pleaded guilty to one count of evading arrest or

detention and was placed on deferred adjudication community supervision for two years.

*See* TEX. PENAL CODE ANN. § 38.04 (West, Westlaw through 2013 3d C.S.).   The State

filed a motion to revoke and adjudicate, which the trial court granted.   In his sole issue,

Smith contends the trial court abused its discretion in finding that he violated the terms of his community supervision by illegally possessing brass knuckles.[1]  *See id.* § 46.05 (a)(5) (West, Westlaw through 2013 3d C.S.).   We affirm.

## I.   BACKGROUND

On July 8, 2013, Smith pleaded guilty to one count of evading arrest, which was committed on December 13, 2012*.   See id.* § 38.04.   The trial court placed him on deferred adjudication community supervision for two years, assessed a $500 fine and court costs, and ordered forty hours of community service restitution.

On August 12, 2013, the trial court approved a motion to amend the terms of Smith's community supervision with the intent to have Smith enter the Outpatient Alcohol/Drug Rehabilitation Program at Treatment Associates in Victoria, Texas.

On September 17, 2013, the State filed a motion to adjudicate, alleging that Smith had committed the following violations: unlawful possession of a firearm; manufacture and delivery of a controlled substance; possession of a controlled substance; prohibited weapon/switchblade knuckles; failure to stay away from places where alcoholic beverages are sold; failure to pay supervisory fees; failure to pay to the local crime stoppers program; and failure to participate and cooperate in the Treatment Associates Outpatient program.

---

[1] Although Smith also argues the evidence is insufficient to support the trial court's finding that he committed the offense of possession of a firearm, the trial court did not find Smith violated his terms of community supervision by possessing a firearm.   Therefore, we need not address this issue.   TEX. R. APP. P. 47.1.

On October 31, 2013, Smith pleaded "not true" to committing the offense of unlawful possession of a firearm by a felon and committing the offense of possession of a prohibited weapon. *See id.* § 46.05(a)(5).   The State abandoned all of the other alleged offenses.

At the hearing for the motion to revoke, Sergeant Robert Hewes of the Victoria County Sherriff's Office testified that he responded to a dispatch for a disturbance at the Adams residence.   When Sergeant Hewes arrived, he spoke with Tammy Adams, Smith's mother. Sergeant Hewes obtained written consent from Adams to search her house and informed Corporal Daniel Bettes and Deputy Travis Dollins of the Victoria County Sherriff's Office of the consent to search the house.   After Sergeant Hewes finished speaking with Adams, he went inside the home and saw various items scattered about the room where Smith was, but did not see contraband or weapons.

Deputy Dollins testified that when he and Corporal Bettes entered a bedroom, he saw Smith kneeling on the floor.   Smith was alone in the bedroom.   Deputy Dollins observed a set of brass knuckles within Smith's reach, so he and Corporal Bettes moved Smith away from that threat.   While Sergeant Hewes placed Smith in the hallway, Deputy Dollins and Corporal Bettes conducted a search of the bedroom.   Deputy Dollins and Corporal Bettes found a semi-automatic pistol, ammunition, tobacco, methamphetamine, and several backpacks of clothes.   Smith acknowledged to Deputy Dollins that the property belonged to him.

Corporal Bettes affirmed Deputy Dollins' testimony that the set of brass knuckles was within Smith's reach and that there was a pistol and ammunition in Smith's room.

3

The defense called Adams to the stand as a witness. She testified that no one was living in her house on the day that the police searched it. According to Adams, Smith was living in a motel. Adams further claimed that Smith gave her some rent money, so that he could stay in the house after he moved out of the motel. Adams stated that she cleaned up the house after the previous tenants had moved out. Adams testified that she put the previous tenant's property in the bedroom where Smith was found. Adams claimed the bedroom belonged to no one and that no one slept in that room. Adams also testified that Smith had arrived at the house on the same day that the police searched it. Adams claimed that "squatters" had been in her house prior to Smith's arrival. Adams also claimed to have found a handgun in the home "right before that evening—that very day. And [she] didn't have time to do anything with it." Adams assumed the gun belonged to the previous renters. In addition, Adams testified that the brass knuckles were not brass knuckles, but a belt buckle that was given to her youngest son, not Smith.

The trial court found that Smith was illegally in possession of a prohibited weapon, brass knuckles, in violation of the terms of his community supervision. The trial court adjudicated Smith guilty of evading arrest as alleged in the indictment and sentenced Smith to confinement in a state jail for two years, a $1,000 fine, and court costs. This appeal followed.

## II. REVOCATION OF COMMUNITY SUPERVISION

By Smith's sole issue, he argues that the trial court abused its discretion in finding that he committed the offense of possession of brass knuckles because the evidence was legally insufficient to support this finding.

4

## A. Standard of Review

We review a trial court's determination to revoke community supervision for an abuse of discretion and view the evidence in the light most favorable to the trial court's decision. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). An abuse of discretion occurs when the trial court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Galliford v. State,* 101 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The trial court is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Hacker,* 389 S.W.3d at 865.

The State must prove by a preponderance of the evidence that a defendant has violated a condition of his community supervision*. Canseco*, 199 S.W.3d at 438 (citing *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006)). In the probation-revocation context, a preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Hacker v. State,* 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). Evidence does not meet this standard when "the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence" or when the finder of fact must "guess whether a vital fact exists." *Id.* For issues governed by the less rigorous burden of proof of "preponderance of the evidence," the appellate standard of review for legal sufficiency is also less rigorous. *Id.* Proof of a single violation is sufficient to support a revocation. *Canseco,* 199 S.W.3d at 439.

## B. Discussion

The first condition of Smith's community supervision forbids him from committing

5

any offense against the laws of the state of Texas. The twelfth condition forbids him from possessing a weapon. Under the Texas Penal Code, possession must be voluntary to make a person criminally responsible for an act. *See* TEX. PENAL CODE ANN. § 6.01(a) (West, Westlaw through 2013 3d C.S.). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b).

Smith argues that a factfinder could not reasonably have found from the evidence that Smith was in possession of the brass knuckles. Although Adams testified that the knuckles were in fact a belt buckle that belonged to her youngest son rather than Smith, the trial court as the fact-finder determined the weight and credibility of each witness's testimony. *See Hacker,* 389 S.W. 3d at 865. Deputy Dollins and Corporal Bettes testified that Smith was in close proximity to what they described as brass knuckles and that the brass knuckles were in plain sight. Moreover, no one else was present in the room when Deputy Dollins and Corporal Bettes entered the room and found Smith kneeling on the floor. Additionally, the officers testified that Smith admitted that the property in the room belonged to him. It was within the trial court's discretion to find the testimony of the investigating officers credible and persuasive while finding Adams's testimony not credible. *Id.* The trial court is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.*

Accordingly, the trial court did not abuse its discretion in finding that Smith violated a term of his community supervision because there was sufficient evidence to support a finding that Smith was in possession of brass knuckles. We overrule Smith's sole issue.

6

### III. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
24th day of July, 2014.